W. L. Conover *v.* United States (No. 3231)[1]

---

[1] T. D. 43743.

United States Court of Customs and Patent Appeals, November 25, 1929

*P. G. McElwee* for appellant.

*Charles D. Lawrence,* Assistant Attorney General (*Thomas J. Canty,* special ttorney, of counsel), for the United States.

[Oral argument October 8, 1929, by Mr. McElwee and Mr. Lawrence]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT Associate Judges

HATFIELD, Judge, delivered the opinion of the court:

This is an appeal from a judgment of the United States Customs Court.

The merchandise involved consists of seismographs. It was assessed for duty by the collector as scientific instruments at 40 per centum ad valorem under paragraph 360 of the Tariff Act of 1922, the pertinent part of which reads as follows:

PAR. 360. Philosophical, scientific, and laboratory instruments, apparatus, utensils, appliances (including drawing, surveying, and mathematical instruments), and parts thereof, composed wholly or in chief value of metal, and not plated with gold, silver, or platinum, finished or unfinished, not specially provided for, 40 per centum ad valorem: * * *

The importer protested this assessment, claiming that the merchandise was dutiable as "all other machines" at 30 per centum ad valorem under paragraph 372.

PAR. 372. Steam engines and steam locomotives, * * * sewing machines, * * * cash registers, * * * embroidery machines, * * * lacemaking machines, machines for making lace curtains, nets and nettings, * * * knitting, braiding, lace braiding, and insulating machines, and all other similar textile machinery or parts thereof, finished or unfinished, * * * all other textile machinery or parts thereof, * * * *all other machines or parts thereof, finished or unfinished, not specially provided for, 30 per centum ad valorem:* * * * [Italics ours.]

On the trial below, James Bryan Eby was called as a witness for the importer. He testified that he was a geologist in the employ of the Roxanna Petroleum Corporation; that his company was interested in this case (probably as the real importer); that he was acquainted with seismograph instruments used for registering shocks of earthquakes; that the articles in question were seismographs, but were constructed on a smaller scale so that they could be moved around with greater ease; that the fundamental principle is the same in both the large and the small seismographs; and that the difference in size has no other significance. He further testified that his company had used seismographs for a year and a half (the witness testified under date of November 1, 1927) for the purpose of

locating "geological structures in which we can locate oil"; that it has about 24 of them in operation, and is drilling for oil on "structures located by these instruments"; that they are used in the field to record earth and rock vibrations or tremors caused by the explosion of dynamite a distance of from $2\frac{1}{2}$ to 5 miles from them; that the record thus obtained shows that the geologic structure is either normal or abnormal and that, from this record, experts might deduce the presence or absence of oil.

The witness, Arthur A. Moore, called by the importer, testified that he was in the employ of the Humble Oil & Refining Co.; that he was in the geophysics department of that company, which department had charge of "the scientific exploration of land"; that his company used seismograph instruments; that it was his duty to make calculations from the records made by these instruments; and that, in his opinion, they were "scientific instruments."

The following stipulation was entered into by counsel for the parties:

Mr. McElwee. We can stipulate that the seismograph instruments in use at the present time range from about 1 foot in height to about 3 feet in height, and from about 6 inches in breadth and thickness to about 12 inches in breadth and thickness.

Mr. Canty. That will be stipulated by counsel for both sides.

Upon this record the court below held that the articles were scientific instruments and dutiable as such under paragraph 360, and, accordingly, overruled the protest.

It is contended by counsel for appellant that while seismograph instruments used in registering the shocks and motions of earthquakes are scientific instruments within the meaning of that term as used in paragraph 360, the articles in question are not scientific instruments because, as he claims, they are used exclusively for commercial purposes. It is claimed that they are used for the purpose of demonstrating the "presence or absence of a geologic structure and the corresponding probable presence or absence of mineral oil." It is contended that, to a certain extent, the seismograph takes the place of other methods of prospecting for oil; that only such scientific instruments as are used in pure, as distinguished from applied science, are covered by the provisions of paragraph 360 and that, as these instruments are imported solely for ordinary commercial uses, they are not scientific instruments within the purview of the statute. We quote from the brief of counsel for appellant:

The evidence shows that seismograph instruments are manifestly practical and reliable machines employed in ordinary gainful business uses by the large oil companies of the United States, and are imported for such purposes, and that hundreds of thousands of dollars are spent by oil companies on the strength of the information obtained therefrom. The evidence shows that these seismographs are not used in scientific laboratories, nor are they used for academic purposes or for the teaching, study, or advancement of knowledge or wisdom.

It will be borne in mind that the evidence shows that the seismographs here in question are quite different from the apparatus used in university laboratories, and are only similar in fundamental principle. They are different in size, construction, and adaptability.

On the other hand, it is contended by the Government that, as the involved instruments are the same, except for size, as those used for registering shocks of earthquakes, they are scientific instruments. It is argued that their use by oil companies for the purpose of ascertaining whether certain geologic structure is normal or abnormal does not alter their dutiable status, even though the information thus obtained is to be used for commercial, rather than scientific, purposes.

In the case of *O. G. Hempstead & Son* v. *United States*, 16 Ct. Cust. Appls. 427, T. D. 43173, this court had before it certain hydrometers and storage-battery testers in chief value of glass, blown, used in making tests of certain alcoholic liquors and storage batteries. They were classified by the collector as scientific articles under the provisions of paragraph 218 of the Tariff Act of 1922.

PAR. 218. Biological, chemical, metallurgical, pharmaceutical, and surgical articles and utensils of all kinds, including all scientific articles, utensils, tubing, and rods, whether used for experimental purposes in hospitals, laboratories, schools or universities, colleges, or otherwise, all of the foregoing, finished or unfinished, composed wholly or in chief value of glass or paste,   *   *   *

In disposing of the case, this court, among other things, said:

The statute now before us, paragraph 218, and its language, "all scientific articles   *   *   *   whether used for experimental purposes in hospitals, laboratories, schools or universities, colleges, or otherwise," is new to the tariff laws, having made its first appearance in the Tariff Act of 1922.   It has heretofore been called to our attention in *United States* v. *Chesterton Co. et al.*, 15 Ct. Cust. Appls. 175, T. D. 42232.   There, water-gauge glasses were imported, and the question at issue was whether they were "scientific tubing" or "articles of blown glass." We there said:

The first portion of paragraph 218 is obviously intended to embrace all sorts of glass articles used for scientific purposes.

Again we said:

Therefore "scientific tubing," as commonly understood, means a collective assembly of glass tubes, or material for glass tubes, *which is of, or pertains to, or is used in, science.*   Whether the merchandise here imported is of such a character raises a question of fact, to be determined from the record.

This is equally true in the case at bar. Whether these imported hydrometers and testers are scientific instruments is a question of fact *to be determined from their use as shown by the record.*   [Italics ours.]

Paragraph 360 provides for "Philosophical, scientific, and laboratory instruments, apparatus, utensils, appliances (including drawing, surveying, and mathematical instruments), and parts thereof,   *   *   *."

It will be observed that the Congress deemed it necessary to enumerate drawing, surveying and mathematical instruments, which would indicate that it thought they would not be covered by the

language "Philosophical, scientific, and laboratory instruments, apparatus, utensils," and "appliances." If drawing, surveying, and mathematical instruments are not included within the general terms of the paragraph it must be because those terms were intended to be limited to such instruments, etc., as were used in pure, rather than applied, science. Furthermore, if the term "scientific," as used in paragraph 218, *supra*, means of, pertaining to, or used in, science (and we so held in the *Hempstead* and *Chesterton* cases, *supra*), we can see no reason for giving the term "scientific," in paragraph 360, extended application. We are of opinion, therefore, that the term "scientific," in paragraph 360, was intended by the Congress to be limited, except as otherwise specially provided therein, to instruments, apparatus, utensils, and appliances used in pure, as distinguished from applied, science. This construction does not seem to be controverted by counsel for either party.

Counsel for appellant contends that the evidence discloses that the seismographs in question "are not used in scientific laboratories, nor are they used for academic purposes or for teaching, study, or advancement of knowledge or wisdom." We have been unable to find any evidence in the record to support this statement. Counsel further contends that the involved seismographs are "quite different from the apparatus used in university laboratories, and are similar only in fundamental principle. They are different in size, construction, and adaptability." This is not an accurate statement of the facts as shown by the record. It appears that the instruments in question are constructed on a smaller scale than those used in laboratories, solely for convenience in handling. Again, it is contended by counsel for appellant that "the evidence shows that seismograph instruments are manifestly practical and reliable machines employed in ordinary gainful business, used by the large oil companies in the United States, and are imported for such purposes, and that hundreds of thousands of dollars are spent by oil companies on the strength of the information obtained therefrom." The only evidence in the record to bear out any portion of this statement is that the instruments are in use by two companies, and that the Roxanna Petroleum Corporation is "now (November, 1927) drilling for oil on structures located by these instruments." It has not been established by evidence that the records made by the instruments are reliable, nor that there is any degree of certainty that oil may be located as a result of their use. There is no evidence that "hundreds of thousands of dollars are spent by oil companies on the strength of the information obtained" from these instruments. All of these statements of counsel may be true, and we do not suggest that they are not, but such facts have not been established by evidence in this case.

This court ought not, and will not, infer that these instruments are substantially reliable and therefore practical instruments for

commercial purposes from testimony to the effect that they have been used to a limited extent over a short period of time by two oil companies. It may be that they are too small for purely scientific uses and are suitable for commercial uses only. It is possible that seismographs used for purely scientific purposes are too "sensitive" for ordinary commercial uses. However, these are but conjectures, and we must dispose of this case in accordance with the established facts contained in the record. It is conceded that the articles in question are seismographs. A seismograph is a scientific instrument. (Funk & Wagnalls New Standard Dictionary.) Surely, if the involved articles are not to be classified as scientific instruments, it must be shown, at least, that they are not devoted exclusively to matters pertaining to pure science, but are successfully, not experimentally, and substantially used in ordinary commercial pursuits. Were these facts affirmatively shown by the record, we might reach a different conclusion. However, on the record before us we must hold that appellant has failed to make a case and that the judgment of the court below is correct.

The judgment is *affirmed*.

LENROOT, Judge, concurs in the conclusion.